Richard M. Lorenzen (Bar No. 006787)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Email: RLorenzen@perkinscoie.com
Telephone: 602.351.8000
Facsimile: 602.648.7000

John S. Kaplan (*Pro Hac Vice*)
Eric J. Weiss (*Pro Hac Vice*)
Mallory Gitt Webster (*Pro Hac Vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Email: JKaplan@perkinscoie.com
Email: EWeiss@perkinscoie.com
Email: MWebster@perkinscoie.com
Telephone: 206.359.8000
Facsimile: 206.359.9408

*Attorneys for Amazon Services LLC*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>POTENTIAL DYNAMIX LLC,<br><br>Debtor. | Case No. 2:11-bk-28944-DPC<br><br>Chapter 11<br><br>Adv. No. 2:13-ap-00799 |
| TIMOTHY H. SHAFFER, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON SERVICES LLC,<br><br>Defendant | **AMAZON SERVICES LLC's RESPONSE TO THE TRUSTEE'S POST-TRIAL BRIEF REGARDING THE BURDEN OF PROOF** |

**RESPONSE TO POST-TRIAL BRIEF REGARDING THE BURDEN OF PROOF**

## I. INTRODUCTION

The Trustee's position on the burden of proof relies on a view of the law that is both unsupported and unsupportable. He ignores the well-established and vast body of case law requiring a plaintiff to prove both the fact of damages by a preponderance of the evidence and the amount of damages with reasonable certainty. He instead urges the Court to relax his burden of proof and require Amazon to disprove damages. Yet he acknowledges that he has not identified a single on-point case that supports applying such a standard here.

The Trustee's brief otherwise inaccurately characterizes the evidence and tries to pin blame on Amazon. The Trustee is mistaken, for example, that "[t]he fact of damages is undisputed." Amazon disputes both that the Trustee is entitled to any damages for his inventory claims and the amount of damages he claims. The Trustee also contends that Amazon had an "absolute" duty to reimburse for lost or damaged inventory, regardless of "the cause or source of the damage." He ignores, however, the explicit policy stating that Amazon is not responsible for loss or damage caused by customers, distributors, or sellers.

As a final example, the Trustee asserts incorrectly that Amazon had "sole access to and control of the facts relating to DAB's inventory." Amazon provided DAB contemporaneous reports about inventory. DAB also should have known what it shipped to Amazon, what it received back from Amazon, what it asked Amazon to destroy, and what reimbursements it received from Amazon. By its own admission, DAB simply chose not to track or retain that information until it entered bankruptcy and even then did not do so fully. The Trustee also chose not to present at trial any inventory records from DAB.

The Trustee is trying to shift the burden of proof because the evidence does not support his claims, and the Court should decline his invitation to deviate from the long-standing, straightforward standard that a plaintiff carries that burden of proof.

## II. ARGUMENT

**A. The Trustee Must Prove Both the Fact and Amount of His Claimed Damages.**

Because the Trustee did not prove his damages at trial, he now invites the Court to

-2-

apply a relaxed standard of proof to his asserted damages. Such a standard would require the Court to ignore the vast body of settled case law requiring that the Trustee prove the fact and amount of damages.

It is black-letter contract law that the plaintiff has the burden to prove entitlement to and the amount of the claimed damages from an alleged breach of contract. *Columbia Park Golf Course, Inc. v. City of Kennewick*, 248 P.3d 1067, 1076 (Wash. Ct. App. 2011) ("To recover, the plaintiff has the burden of proving that the defendant breached the contract, that the plaintiff incurred actual economic damages as a result of the breach, and the amount of the damages."); *see also Bill & Melinda Gates Fdn. v. Pierce*, 475 P.3d 1011, 1020 (Wash. Ct. App. 2020) ("The burden of proof is on the party seeking damages."); *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) ("It is one of the most basic propositions of law that the plaintiff bears the burden of proving his case, including the amount of damages." (quotations omitted)). The plaintiff also bears the burden of proving damages in claims for turnover. *In re Jacobson*, 676 F.3d 1193, 1200–01 (9th Cir. 2012) ("The trustee has the burden of proving the estate is entitled to a turnover.").

Consistent with that burden, a plaintiff cannot recover damages unless they prove the fact of damages by a preponderance of the evidence and the amount of damages "with reasonable certainty." *Columbia Park*, 248 P.3d at 1076; *see also Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 315 P.3d 1143, 1150 (Wash. Ct. App. 2013) ("A claimant has the burden of proof on the amount of damages, and must come forward with sufficient evidence to support a damages award."), *rev. denied*, 325 P.3d 914 (Wash. 2014); *Lincor Contractors, Ltd. v. Hyskell*, 692 P.2d 903, 907 (Wash. Ct. App. 1984) ("Damages must be proved with reasonable certainty or supported by competent evidence in the record."), *rev. denied*, 103 Wn.2d 1036 (Wash. 1985). "Damages that are remote or speculative cannot be recovered." *Hanson PLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 794 P.2d 66, 73 (Wash. Ct. App. 1990).

There is also no general burden-shifting framework, as the Trustee suggests, that requires a defendant to *disprove* damages. *See* Tr. Br., ECF No. 370 (Mar. 12, 2021) at 2.

-3-

As the Washington Supreme Court has long held, a plaintiff's "lack of affirmative proof of a vital fact may not be cured by the [defendant's] failure to prove the negative." *Emerick v. Bush*, 220 P.2d 340, 342 (Wash. 1950); *see also Jeffers v. City of Seattle*, 597 P.2d 899, 905 (Wash. Ct. App. 1979) ("It is axiomatic the plaintiff has the burden of proof by a preponderance of the evidence in every element essential to his cause of action."); 2 McCormick on Evid. § 337 (8th ed. 2020) (stating that "the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the jury of its existence as well").

**B.  The Court Should Decline the Trustee's Invitation to Adopt Novel Legal Standards.**

The Trustee refuses to accept that he maintains the burden of proof and instead urges the Court to adopt a relaxed standard, even as he admits that he has identified "no case" directly on point. Tr. Br. at 2–4. There is no basis to adopt that standard here.

**1.  The FBA Agreement Does Not Impose on Amazon an Absolute Duty to Reimburse or Shift the Burden of Proof to Amazon.**

The Trustee asserts that the Agreement between DAB and Amazon sets a more relaxed burden with respect to his proof of damages. *Id.* at 2–3. Ignoring other provisions, the Trustee directs the Court's attention to a sentence providing that "[i]f there is a loss of or damage to any Units while they are being stored, we will . . . pay you the Replacement Value." *Id.* at 2 (quoting Trial Ex. 1 at 0032). From that, the Trustee contends that Amazon has an "absolute" duty to pay for unsellable inventory and that Amazon cannot raise a "defense" if inventory is lost or damaged, even if the seller damaged the inventory. *Id.* at 2–3.

The Agreement is clear, however, that Amazon is not liable for all lost or damaged inventory. The Agreement excludes from Amazon's responsibility reimbursement for units "that are defective or lost or damaged *by customers, distributors or sellers.*" Trial Ex. 151 at 0001 (emphasis added). Not only does the plain language show that there is no absolute reimbursement duty, it would also be illogical for Amazon to agree to pay for loss or damage it did not cause and was outside its control. The Trustee offered into evidence the

-4-

policy outlining Amazon's responsibility to reimburse for certain loss or damage; he cannot now ask the Court to ignore what it says. *See id.*

The Trustee also continues to shift positions with respect to bailment law. He first asserted in his motion for partial summary judgment that bailment law applied because he wanted to shift the burden to Amazon. MPSJ, ECF No. 266 (Nov. 20, 2020) at 16. In response, Amazon showed that DAB and Amazon had agreed that bailment law did not apply. Resp. to MPSJ, ECF No. 306 (Dec. 23, 2020) at 12. Amazon also showed that even if bailment law applied and the Trustee met his initial burden under that framework, Amazon could prove reasonable care and shift the burden back to the Trustee. *Id.*

Now the Trustee acknowledges that bailment law does not apply because he wants to prevent Amazon from raising a defense. Tr. Br. at 3; Joint Pretrial Statement, ECF No. 332 (Feb. 5, 2021) at 19–20 (recognizing disclaimer as an undisputed material fact). But Amazon has not invoked a bailment-law or reasonable-care defense; Amazon has simply responded to the Trustee's changing positions. At every step, Amazon has maintained that the Trustee bears the burden of proving his claims and asserted damages. Without the application of bailment law, the burden cannot shift to Amazon.

**2. The Legal Standard Offered by the Trustee Applies Only When—Unlike Here—the Defendant Engages in Wrongful Conduct that Obstructs Proof of Damages.**

The Trustee otherwise admits that he has not identified any on-point cases to support a different burden of proof. Tr. Br. at 4. He nonetheless urges the Court to apply decades-old, inapposite cases holding that when a defendant's *wrongful* conduct causes imprecise evidence of damages, a plaintiff does not necessarily fail to meet their burden with the imprecise evidence. *See id.* at 4–7 (citing *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 682 (1946), *superseded by statute as recognized in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27

-5-

(2014); *Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265 F.2d 263, 265 (2d Cir. 1959)).[1]

The facts of those cases confirm how far off base the Trustee is in urging their application here. In *Eastman Kodak Co. of N.Y. v. Southern Photo Materials Co.*, the Supreme Court held that because the defendant engaged in illegal monopolization, it could not "complain" that damages "cannot be measured with the same exactness and precision as would otherwise be possible" without the monopolization. 273 U.S. at 379; *see also Story Parchment*, 282 U.S. at 560 (concluding the same in another antitrust action). The Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* similarly concluded that if an employer failed to comply with the Fair Labor Standards Act's record-keeping requirements, the employer was required to rebut the employee's damages evidence. 328 U.S. at 687. And in *Shapiro Bernstein & Co. v. Remington Records, Inc.*, the Second Circuit recognized that because "the defendants had consciously and deliberately failed" to account for "their [manufacture] of plaintiffs' copyrighted records" as required by statute, the plaintiff could rely on more tenuous evidence of damages. 265 F.2d at 272–73.

In those cases—none of which involved straightforward breach-of-contract claims—because the defendants engaged in wrongful conduct that obstructed reliable proof of damages, the courts concluded that the defendants should bear some consequence of uncertainty about the plaintiff's proof.

Unlike the wrongful conduct in those cases, the issue that the Trustee alleges here is that Amazon did not provide him "better evidence" about DAB's inventory. Tr. Br. at 3; *see also id.* at 3–7. But Amazon complied with its contractual responsibility to keep "electronic records that track[ed]" DAB's "Units" in the FBA program and provided those records to DAB. Trial Ex. 1 at 0032–33.

---

[1] In *United States v. Fabric Garment Co.*, 366 F.2d 530, 536 (2d Cir. 1966), the Second Circuit held that the defendant, as bailee, had "to explain the size and nature of the damage once the Government had established both the fact of conversion and the approximate amount converted." But the Trustee admits that bailment law and related principles do not apply in this case. Tr. Br. at 3; *see also* Tr. Ex. 1 at 0036 (Section F-12). Nor has the Trustee alleged that Amazon converted DAB's inventory.

-6-

Amazon also met its discovery obligations to preserve data and produce information responsive to the Trustee's discovery requests. *See* 2/19/21 Trial Tr. at 55:20–56:23, 57:7–19. Through Seller Central, for example, Amazon provided DAB contemporaneous records related to its inventory in the FBA program. *See id.* at 92:19–93:12; Ice Dep. at 31:14–18, 212:5–10; Bachand Dep at 7:11–14, 13:4–14:12; Moore Dep. at 49:12–25, 50:8–19. Amazon then produced to the Trustee data comprising the complete inventory-transaction history for DAB amounting to millions of rows of data. Ice Dep. at 244:19–245:12, 249:8–25; 2/19/21 Trial Tr. at 55:20–56:23, 57:7. There is no wrongful conduct—let alone the same type of wrongful conduct in the cases on which the Trustee relies—that would justify shifting the burden to Amazon.

The Trustee argues that "because Amazon was in possession of the inventory and had a duty to keep track of it," Amazon can "better . . . explain what happened." Tr. Br. at 6. But the Trustee cites no authority shifting the burden because a defendant may be able to "better" explain what happened. "Access to evidence" does not determine the burden of proof. *Tourgeman*, 900 F.3d at 1109. Nor does the fact that one party has better access to information somehow amount to wrongful conduct that causes an inability to prove damages. *See* 2 McCormick on Evid. § 337 (8th ed. 2020) ("Very often one must plead and prove matters as to which his adversary has superior access to the proof.").

Moreover, Amazon was not the sole source of information about DAB's inventory. DAB was responsible for tracking its inventory but made only a passing effort to do so until it entered bankruptcy. *See, e.g.*, Trial Ex. 222 at 4–6; Lawcock Dep. at 22:20–24:15, 57:6–59:1, 62:12–63:10, 78:7–82:13, 91:8–93:23, 113:15–116:16, 114:24–159:7, 159:15–165:15, 165:20–176:4, 188:20–193:20; Reilley Dep. 38:10–40:18. The Trustee admitted to the Court that DAB in 2010 transitioned from Amazon "without fully recognizing the inadequacies of its internal systems," "encountered difficulty in reconciling its inventory," and failed to establish "[i]nternal controls." Trial Ex. 222 at 0005. And just months before he filed his Complaint, the Trustee admitted to the Court that DAB only began in June 2011 maintaining an inventory database. *Id.* at 0007. Yet unlike Amazon, the Trustee offered no

-7-

evidence from DAB—not a single data file—addressing its inventory. No shipping information. No sales information. No returns information. No removals information. No reimbursement information.

Beyond that, Amazon *has* explained what happened to DAB's inventory. Amazon provided DAB the contemporaneous inventory records. Trial Ex. 1 at 0032–33. Amazon produced the M15 data, which contains all the information needed to account for DAB's inventory, consistent with the Trustee's claims for "Lost Inventory." *See* Compl. ¶¶ 21, 45, 56. Amazon witnesses answered the Trustee's questions during multiple depositions. Although it was under no obligation to do so, Amazon led informal sessions with the Trustee and his team to help them understand the data. *See* 2/16/21 Trial Tr. at 211:25-212:14. Amazon even responded to informal discovery requests beyond those required by the Federal Rules. *See* Trial Ex. 116.

Finally, the Trustee asserts that because Amazon "decided what data to provide" in discovery, he is somehow entitled to a relaxed burden of proof. Tr. Br. at 4. But Amazon did not decide what data to provide; it produced the data and information responsive to the Trustee's discovery requests. That is how the litigation process works. If the Trustee thought Amazon had not produced all responsive data (even though Amazon did so), he was required to move to compel their production. He did not do so and cannot now—particularly after trial—assert that Amazon should have produced something more. *See In re McMahon-Jones*, 461 B.R. 835, 851 (W.D. Wash. Bankr. 2011) (holding that discovery "disputes are generally best handled in the pretrial period" and the plaintiff had not then "availed itself of the opportunity to deal with" the dispute); *Sanchez v. Stryker Corp.*, 2012 WL 13006186, at *5 (C.D. Cal. Mar. 28, 2012) ("Plaintiff's remedy was to move to compel discovery. It is too late in the day to now blame Defendants for discovery violations.").

**C.     The Trustee Did Not Prove His Claimed Damages.**

From there, the Trustee argues that he met his proposed relaxed burden through (1) Ms. Morones's testimony that Amazon is responsible for 111,688 units of DAB inventory and (2) the M15 data that he asserts show Amazon is responsible for 215,191 units. *See* Tr.

-8-

Br. at 7. He also argues that Amazon did not disprove his claimed damages. *See id.* at 10–11. But just as he was wrong on the law, so too is he wrong on the facts.

### 1. The Trustee Did Not Prove Damages via Ms. Morones's Testimony.

The Trustee argues that Ms. Morones's testimony proves damages. *See id.* at 8. But the Trustee addresses just two facets of Ms. Morones's testimony: (1) her exclusion of the 19,890 inventory units that Amazon Removed after January 2014, and (2) her failure to claim any damages for Code Q units. *Id.* at 8–9. Neither of those narrow issues explains how Ms. Morones's testimony proves damages for 111,688 units.

As to the 19,890 Removals after January 2014, the Trustee initially argued that those units should not be counted because Amazon had directed DAB to submit Removal requests within 90 days of the October 22, 2013, termination. *See* MPSJ, ECF No. 266 (Nov. 20, 2020) at 12–14. But the Court rejected that argument. Mins., ECF No. 358 (Feb. 11, 2021) at 2–3. The Trustee now asserts that those Removals cannot be credited for four other reasons: (1) Amazon improperly canceled Removal requests, (2) the M15 data show more inventory than the Seller Central data each month, (3) Amazon destroyed some of the Removed units, and (4) Amazon did not prove where it sent the Removed units. Tr. Br. at 8. None support the Trustee's position, let alone prove that Amazon owes for the units.

(1) Amazon did not improperly cancel Removal requests. As Tasha Bachand[2] testified, if a seller submits multiple Removal requests for the same inventory—as DAB did—the later-submitted requests are necessarily cancelled because Amazon cannot remove more than once the same inventory unit. *See* 2/18/21 Trial Tr. at 161:6–11.

(2) The M15 data and Seller Central data accounted for inventory at *different* points of the month. As Ms. Bachand explained, monthly inventory levels in the M15 data do not match monthly inventory levels in the Seller Central data because one data set accounts inventory at the end of each month and the other accounts inventory in the middle of each month. *See id.* at 153:4–154:14. Ms. Morones incorrectly assumed that both data sets

---

[2] Contrary to the Trustee's assertion, Amazon disclosed Ms. Bachand as a person with knowledge. *See* Tr. Br. at 11; Amazon Discl., ECF No. 263 (Oct. 27, 2020).

-9-

accounted for month-end inventory, 2/16/21 Trial Tr. at 176:3–16, leading to her incorrect calculation.

(3) Amazon destroyed at DAB's request 7,783 of the 19,890 Removed units. The evidence at trial confirmed that DAB chose the Removal settings asking Amazon to destroy unsellable units or units that would soon incur long-term-storage fees. Trial Ex. 245; 2/18/21 Trial Tr. at 154:19–155:13, 159:12–161:5 The Trustee further confirmed in response to the Court's inquiry that DAB, not Amazon, chose those settings. 2/19/21 Trial Tr. at 211:5–212:17.

(4) Amazon sent the units requested for return to the address provided by DAB. 2/18/21 Trial Tr. at 159:22–25. Amazon need not and could not prove who received those units at the address provided.

As to Code Q, Ms. Morones's exclusion from her damages opinion units identified with a Code Q *reinforces* the conclusion that Amazon does not owe for those units. As the Trustee acknowledged, Ms. Morones "didn't feel like she had the background or the documentation to show that" Code Qs were "Amazon's fault." 2/16/21 Trial Tr. at 33:4–9; *see also id.* at 197:25–198:2. The Trustee cannot ask the Court to accept Ms. Morones's opinions in their entirety about all Adjustment codes while at the same time inviting the Court to ignore Ms. Morones's conclusion that she cannot opine about Code Q. Ms. Morones accepted every assumption the Trustee or counsel provided her, and even she was unwilling to say that Amazon is responsible for inventory identified with a Code Q.

The Trustee otherwise misconstrues testimony about Code Q from Amazon witness Jeff Moore. Tr. Br. at 8–9. Mr. Moore testified that Code Q was applied as the result of a "case-by-case" investigation and that he did not know precisely how Code Q was applied when DAB participated in the FBA program. *See* Moore Dep. at 120:14–121:6. That testimony does not show that Amazon is somehow responsible for Code Q; Mr. Moore admitted that he did not know. *Id.*

Ms. Bachand, who was designated as the Rule 30(b)(6) witness to describe how the codes worked with DAB, explained that Code Q described damage from a source *other than*

-10-

*Amazon*. 2/18/21 Trial Tr. at 109:15–111:3, 115:22–117:8, 119:11–120:9; Ice Dep. at 174:6–14 (confirming that "the meaning of the [Adjustment] codes" had not "changed"). The M15 data likewise confirmed that Amazon is not responsible for Code Q. *See* 2/19/21 Trial Tr. at 177:1–14 (testifying that "what [Mr. Williams had] seen in the data" showed Amazon was not responsible for Code Q); *see also id.* at 180:20–25, 181:19–182:1.

### 2. The Trustee Did Not Prove Damages via the M15 Data.

The Trustee also contends that the M15 data prove damages for nearly double the number of units to which Ms. Morones testified. Tr. Br. at 9–10. The Court will recall that the Trustee did not admit the M15 data in his case-in-chief and attempted to keep the data out of evidence when Amazon moved to admit it. *See* 2/18/21 Trial Tr. at 28:9–29:17. It is disingenuous to now claim that the M15 data independently prove his alleged damages.

Nonetheless, the Trustee's position about what the M15 data purportedly show is wrong. The claimed 215,191 units comprise *all* Code Es, Code Qs, Code Ds, and missing-but-not-found units (the net of Code M and Code F) in the M15 data. *See* Trial Ex. 172 at 0004, 0010. But as the Court is aware, the Trustee cannot simply add up all the various Adjustment codes to arrive at a damages figure. *See* Trial Ex. 264.

### 3. Tasha Bachand Testified from Personal Knowledge about Inventory Practices and Adjustment Codes.

The Trustee attacks Ms. Bachand's testimony, arguing that she did not have personal knowledge about how Adjustment codes were used and applied from 2008 to 2013 when DAB participated in the FBA program. Tr. Br. at 9–10. In the Trustee's view, an employee cannot have personal knowledge about practices that pre-date their employment. *See id.* at 9–10.

The Ninth Circuit and other courts have rejected that myopic view of personal knowledge. Knowledge is not hearsay merely because a witness acquired it from another source. *See Navel Orange Admin. Comm. v. Exeter Orange Co.*, 722 F.2d 449, 453 (9th Cir. 1983) (rejecting hearsay objection to testimony that was based on what "employees had learned" and had been "reported to" them). And so a witness has "personal knowledge"

-11-

even when it is "based, as most knowledge is based, on information obtained from other people." *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989).

Consistent with that principle, courts routinely allow employees to testify about practices that pre-date their employment but about which they subsequently learned. In *United States v. Thompson*, 559 F.2d 552, 553–54 (9th Cir. 1977), for example, the Ninth Circuit held that although the employee had not been appointed a manager until after the events in question, he could testify about earlier practices. His training and experience provided him "ample personal knowledge" to testify about "normal company procedures" at the earlier date. *Id.* at 553–54; *see also In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F. Supp. 1293, 1304 (E.D. Pa. 1992) (concluding that the declarant "acquired personal knowledge by reviewing relevant documents and discussing the issues" with colleagues).

As the Court heard at trial, Ms. Bachand's personal *involvement* in addressing seller accounts goes back to 2011. 2/18/21 Trial Tr. at 68:9–11. But her personal *knowledge* of Amazon's inventory practices goes back even further. Ms. Bachand acquired knowledge about Amazon's inventory practices from 2008 onward from multiple reliable sources, and she is the person most knowledgeable about the Adjustment codes and M15 data. *See* 2/18/21 Trial Tr. at 55:13–19, 58:3–11. When she was hired, Ms. Bachand was trained by Justin Ice and others about how Amazon's inventory system worked before 2015. *Id.* at 54:12–21, 56:9–17. Ms. Bachand used her training to perform "inventory reconciliations" predating her employment. *Id.* at 65:14–22. She "had to understand what had happened, if anything, in that period that would affect the reconciliation." *Id.*

Ms. Bachand also performed "deep dives on certain sellers' accounts" that went back several years and "g[a]ve [her] insight into how things worked" then, including the historical use of Adjustment codes. *Id.* at 65:23–66:2, 68:9–11. Ms. Bachand personally worked with data similar to those in this case.

Ms. Bachand's own experience, in addition to her training and conversations with other Amazon personnel, *see id.* at 95–96, gave her "ample personal knowledge" from

which to testify about inventory practices and the M15 data, *Thompson*, 559 F.2d at 553–54. Her knowledge was also confirmed by the data.

### 4. Amazon Showed that the Trustee's Claimed Damages Were Wrong.

The Trustee also contends that Amazon did not meet its nonexistent burden because Adjustments are complex and Mr. Williams should have considered more units in calculating the maximum possible number at issue. Tr. Br. at 12–14.

At trial, Mr. Williams and Ms. Bachand explained that Ms. Morones had not accounted for the fact that discrete damaged inventory units cannot be quantified from the Adjustments data.[3] *See* Trial Ex. 5 at 0023–24; 2/18/21 Trial Tr. at 106:10-114:15, 128:7-132:18; 2/19/21 Trial Tr. at 91:15–92:1. She also did not consider that multiple Adjustment codes routinely apply to a single unit and that an Adjustment code often does not represent the final disposition of a unit. Trial Ex. 5 at 0024. Because the Trustee continued to change and expand his theories, he and Ms. Morones attempted to use the M15 data far beyond its purpose—to calculate any "Lost Inventory" alleged in the Complaint. That Ms. Morones incorrectly used the Adjustments data does not mean that the data were flawed.

Mr. Williams also showed that Amazon's maximum potential responsibility was limited to 36,972 units, of which Amazon already reimbursed DAB for at least 28,541 units, leaving a maximum number of potential unaccounted units at 8,431.[4] *Id.* at 0020–22. In his analysis applying Adjustments as Ms. Morones did, Mr. Williams concluded that Amazon had over-reimbursed DAB for lost or damaged units and had no further responsibility. *Id.*

---

[3] Mr. Williams also explained that Ms. Morones erroneously credited Amazon only with the dollar amount of reimbursements rather than the total number of units that Amazon reimbursed (28,541). Trial Ex. 5 at 0011. Ms. Morones also ignored that Amazon reimbursed not just with dollars but also with like-kind units. *Id.* at 0026. Mr. Williams further described that Ms. Morones had double counted units because the 84,457 units accounted between Ms. Morones's "Expected Ending Inventory," Lost/Damage Reimbursements, and units transferred from Amazon to DAB more than offset the alleged 72,357 Reimbursable Adjustments. *Id.* at 0013, 0026–27.

[4] The Court will also recall that Amazon likely is not responsible for those 8,431 units. Mr. Williams testified that his report conservatively views the inventory data favorably to DAB. Trial Ex. 259 ¶ 8. Mr. Williams did not credit Amazon for the 13,193 additional units of reimbursements because he could not confirm from the data that those reimbursements addressed lost or damaged inventory. Trial Ex. 5 at 0021. Ms. Bachand also testified that Amazon is not responsible to DAB for additional units because they are related to adjustments for which Amazon is not responsible. 2/18/21 Trial Tr. at 100:7–19.

at 0022. But to address the uncertainty inherent in the Adjustments data—in a way favorable to the Trustee—Mr. Williams also omitted Adjustments, concluding that under that calculation, Amazon may be liable for no more than 8,431 units ($137,516). Trial Ex. 259 ¶ 6.

The Trustee's arguments about why the maximum must be higher are unsupported and, frankly, confusing. The Trustee asserts that the maximum number of unaccounted units must include Removals. *See* Tr. Br. at 13–14. But Removals are already accounted; they were either returned to DAB or destroyed at DAB's request. 2/19/21 Trial Tr. at 77:18–78:9. The Trustee also argues that adding Code E units and the net of Code M and Code F units yields 49,537 units, more than the maximum potential unaccounted units. Tr. Br. at 14. But as the evidence at trial showed and as repeated above, Adjustment codes cannot merely be added together to determine responsibility. *See, e.g.*, 2/18/21 Trial Tr. at 119:21–120:3.

### 5. The Trustee Did Not Prove His Claimed Stay-Violation Damages.

Finally, the Trustee recounts Ms. Morones's methodology for calculating purported lost profits from the stay violation and asserts that despite the Court's admission of Mr. Williams's testimony, Amazon "offers no admissible evidence contradicting" her calculation. Tr. Br. at 14–15.

First, in yet another shift in legal theory, the Trustee for the first time asserts after trial that Amazon bears the burden on his claim for lost profits related to the automatic stay. But as with his other damages claims, the Trustee has the burden of proving any lost profits. *Eagle Grp., Inc. v. Pullen*, 58 P.3d 292, 298 (Wash. Ct. App. 2002) (holding "lost profits" must be proved "with reasonable certainty"), *rev. denied*, 75 P.3d 968 (Wash. 2003).

Second, even though Amazon has no burden, Mr. Williams identified multiple flaws with Ms. Morones's calculation, and his testimony and report are already admitted in evidence. Those flaws include her inaccurate statement that DAB could not sell on Amazon.com for 21 days rather than the 15 days that the undisputed evidence shows; her failure to verify the assumption that DAB had lost vendors, of which the Trustee offered

-14-

only hearsay; her reliance on the Trustee's contradictory statement that November 2012 to March 2013 represented a period of stabilized, growing revenue for DAB when the Trustee testified under oath at his deposition that such revenue was actually achieved in July or August 2012 when revenues were materially lower; and her application of an unrealistic growth factor for May through October 2013, given that the previous three months showed a month-over-month *decline* in revenue. Trial Ex. 5 at 0034–36.

Mr. Williams also testified that the appropriate damages for the 15-day period are the expected lost sales during that period: $47,497. *Id.* at 0034, 37–38. There is no evidence justifying damages for a longer period. *See id.* The Trustee has the burden of proving lost profits, and Amazon is entitled to refute Ms. Morones's testimony by exposing her many errors.

## IV. CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny the Trustee's request to impose a relaxed burden of proof or to shift the burden to Amazon.

Dated: April 2, 2021

By: s/ Eric J. Weiss
Richard M. Lorenzen (Bar No. 006787)
John S. Kaplan (*Pro Hac Vice*)
Eric J. Weiss (*Pro Hac Vice*)
Mallory Gitt Webster (*Pro Hac Vice*)

*Attorneys for Amazon Services LLC*

-15-

# CERTIFICATE OF SERVICE

On this date I caused to be served on each of the attorneys identified below, via the delivery methods indicated below, a copy of the foregoing document, as follows:

| | |
|---|---|
| Dale C. Schian<br>Mark C. Dangerfield<br>Kenneth N. Ralston<br>**GALLAGHER & KENNEDY, P.A.**<br>2575 East Camelback Road<br>Phoenix, AZ 85016-9225<br>dale.schian@gknet.com<br>mark.dangerfield@gknet.com<br>ken.ralston@gknet.com | **X**  Via the Clerk's eFiling Application<br>___ Via U.S. Mail, 1st Class<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>**X**  Via Email<br>___ Other: _____ |

*Attorneys for Chapter 11 Trustee*

Dated: April 2, 2021  s/ Mallory Gitt Webster

-16-