Mark C. Dangerfield #010832
Dale C. Schian, #010445
Kenneth N. Ralston, #034022
mark.dangerfield@gknet.com
dale.schian@gknet.com
ken.ralston@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Attorneys for Timothy H. Shaffer, Chapter 11 Trustee

Email for Electronic Service and
Court documents: bkdocket@gknet.com

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>POTENTIAL DYNAMIX, LLC,<br><br>Debtor. | Case No. 2:11-bk-28944-DPC<br><br>CHAPTER 11<br><br>Adv. No. 2:13-ap-00799 |
| TIMOTHY H. SHAFFER, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON SERVICES LLC,<br><br>Defendant. | **RESPONSE TO AMAZON'S POST-TRIAL MOTION TO EXCLUDE PREJUDGMENT INTEREST**<br><br>DATE:  April 19, 2021<br>TIME:  10:00 a.m.<br>LOCATION: Zoom hearing |

Trial is over. The evidence is closed. Closing argument has concluded. Yet, Amazon Services LLC's ("Amazon") Motion to Exclude Prejudgment Interest ("Motion") seeks to litigate an issue that was not preserved in the Joint Pretrial Statement [DE 332] based on "evidence" that was not presented at trial. The attempt is untimely and improper. The Motion also misapplies the law. In Washington, like Arizona, just because the parties disagree about damages does not cause the damages to be "unliquidated." The Trustee's claims are susceptible to calculation. For these reasons, the Court should deny Amazon's Motion and award prejudgment interest as requested by Timothy H. Shaffer, Chapter 11

Trustee ("Trustee") for debtor Potential Dynamix, LLC ("DAB").

I.  **BACKGROUND**

The case is about Amazon's duty to account for product DAB delivered to the FBA program. Amazon is responsible for the loss of or damage to DAB inventory in Amazon's possession regardless of fault. Exh. 1.0031. DAB paid Amazon to manage its inventory. Ice Dep. 173:18-20, Jul. 28, 2017. Amazon provided its Seller Central portal to permit DAB to track its inventory. Moore Dep. 50:8-23, Dec. 5, 2017. DAB noted that substantial FBA inventory was missing. Azzarelli Dep. 76:3-16, Apr. 18, 2019.

After Amazon claimed the Seller Central data was inadequate to reconcile the DAB inventory, it committed to providing a complete data set. Exh. 140, 141. Amazon then produced the M15 Data, which was not a complete data set, and said that was the best they could do and all that was needed. Testimony of Ms. Bachand, Trial Tr. 50:18-57:19, 85:21-86:2, Feb. 19, 2021. The M15 Data was not complete, nor was it all the data available to Amazon for the DAB inventory, but Amazon refused to produce additional data despite requests from the Trustee. *Id.*

Amazon declined to process DAB's requests for missing inventory choosing instead to wait "til the end." Exh. 163. After waiting eight years for reimbursement, Amazon first claimed the data it directed the Trustee to use was inadequate to calculate Amazon's liability. Exh. 5.0013. Now it claims that the quality of its data causes its "accounting" to be unliquidated. Motion at 2:16-23. Both contentions should be rejected.

The four-day trial was preceded by a 122-page joint pretrial statement. In the pretrial statement, the parties addressed four "agreed issues of law" followed by two issues Trustee identified and two more issues Amazon identified. [DE332] at 93:16–115:25. Whether either party delayed the progress of this case is not among the issues the parties highlighted for trial. *Id.*

Yet post-trial, Amazon seeks to offer testimony (Morones), exhibits (Cameron and Ashworth draft reports), and a theory not presented at trial (the Deep Dive). Although Amazon presents the Motion as supposedly relevant to whether it should be liable for

interest, it must be recognized for what it is – a post-trial attack on the Morones testimony based on evidence not presented at trial and evidence that would not have been admissible if it had been offered.

**II.  ARGUMENT**

Amazon's position represents a strained view of Washington law and asks the Court to consider issues of fact that Amazon could have litigated at trial. First, Amazon argues that Trustee's damages are "unliquidated" and further argues, in essence, that he is not entitled to prejudgment interest because Amazon's expert disagrees with the Trustee's expert. Second, Amazon argues that Trustee delayed this case and during such delays, should not be entitled to prejudgment interest. Amazon is incorrect on both counts and Trustee responds to each argument in turn.

**A.  Trustee's Damages Are Calculable, Not Requiring Discretion of the Court**

Prejudgment interest is generally favored by Washington courts "on the premise that a party that retains money it should have paid to another should be charged interest." *Pierce County v. State*, 185 P.3d 594, 631 (Wash. Ct. App. 2008). "Prejudgment interest is available under Washington law "when an amount claimed is 'liquidated.'" *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1047 (Wash. 2014). A liquidated claim is present "when the evidence furnishes data which, if believed, makes the exact computation of the amount possible without resort to opinion or discretion." *Walla Walla Cty Fire Dist. No. 5 v. Washington Auto Carriage, Inc.*, 745 P.2d 1332, 1334 (Wash. Ct. App. 1987). Washington Courts have noted, moreover, that "[i]t may be safely said that the tendency has been in favor of allowing interest rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained [has] grown less and less stringent." *Prier v. Refrigeration Eng'g Co.*, 442 P.2d 621, 627 (Wash. 1968).

"A dispute over the claim," however, "does not change the character of a liquidated claim to unliquidated." *Stevens v. Brink's Home Sec., Inc.*, 169 P.3d 473, 477 (Wash. 2007). In other words, the defendant's claim that he or she is not liable for part or all of the plaintiff's

3

liquidated damages will not preclude a successful plaintiff from receiving prejudgment interest. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 132–33 (Wash. 2000); *Prier*, 442 P.2d at 626–27.

Trustee's claim is for breach of contract, which includes its lost, damaged, mis-received, and improperly reimbursed inventory. Trustee's expert, in turn, calculated the number of inventory units for which Amazon is liable: 111,688. *See* Ex. 172.0004. Using the number of missing units and applying the average unit price of $16.31 ($22.00 less Amazon's fees), Trustee's damages are calculable.

Merely because Amazon's expert disagrees with Trustee's analysis, does not mean that Trustee's claim for damages is "unliquidated." As the Washington Supreme Court explained in *Prier*, "unliquidated" claims are "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disproved or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or smaller amount should be allowed." 442 P.2d at 626. As the court explained:

> a claim, for the full amount of a note for $1,000 is 'liquidated' though the defendant claims, and the evidence is in dispute on such defense, that he has paid half this sum. So also a claim for $1,000 alleged to have been in small amounts at different times embezzled by a bank cashier should be considered 'liquidated,' through the fact and amount of each separate taking is disputed.

*Id.* **"In short,"** the court said, **"it is the character of the claim and not of the defense that is determinative** of the question whether an amount of money sued for is a 'liquidated sum.'" *Id.* (emphasis added.) The *Prier* court went on to explain that "where the amount sued for may be arrived at by a process of measurement or computation from the data given by the proof, without any reliance upon opinion or discretion after the concrete facts have been determined, the amount is liquidated and will bear interest." *Id.*

If a claim as a whole could be considered liquidated and computed using the plaintiff's theory, it does not become unliquidated if the defendant disputes particular transactions within that whole.

Amazon heavily relies on *Rekhter*, however, that case does not show that Trustee's

4

damages are unliquidated. In *Rekhter*, individualized data was necessary to determine how much money was owed to the plaintiff using one particular formula over another. 323 P.3d at 1047. That data was unavailable. *Id.* It wasn't just that the jury had to decide between the different methodologies offered by each side's expert; instead, the Court concluded the jury had to exercise discretion because the experts "testified as to how to *estimate what data would have been* entered into the CARE formula." *Id.* (emphasis added). The experts, in that case "provided only estimates . . . [b]ecause the relevant data was never actually entered or collected." *Id.* That is not the case here. Trustee's expert relies on data Amazon had a duty to maintain and provide. While not perfect, the data identifies the items for which Amazon is liable and permits that liability to be calculated.

Although a claim is unliquidated if the fact finder must exercise discretion, the act of fact finding is distinct from the exercise of discretion. For instance, in *Dautel v. Heritage Home Ctr.*, Inc., the court found that although the parties disputed the percentage to be applied to an employee's unpaid commissions, the damage award was liquidated because it "could be computed with exactness once the trial court determined that [the employee] was entitled to her full commission rate of 20 percent." 948 P.2d 397, 401 (Wash. Ct. App. 1997). Similarly, in *Egerer v. CSR W., LLC*, the fact finder determined the market price of a particular service and compared it to a contract price to calculate an exact amount of damages, leading to a liquidated sum. 67 P.3d 1128, 1133–34 (Wash. Ct. App. 2003). The court held that the amount owed could be computed with exactness once the trial court believed the evidence establishing the market price as it could be compared to the contract price to determine the damages. *Id.* Only when the fact finder has to make an award based on opinion and discretion—for example, when the fact finder has to determine whether an award is **reasonable**—is the award unliquidated. *See, e.g.*, *Aker Verdal A/S v. Neil F. Lampson, Inc.*, 828 P.2d 610, 618 (Wash. Ct. App. 1992) (concluding that where the jury had to determine a "reasonable" hourly rate, the labor costs were unliquidated); *Ski Acres Dev. Co. v. Douglas G. Gorman*, Inc., 508 P.2d 1381, 1385 (Wash. Ct. App. 1973) ("In this case there was a question of the reasonableness of the cost of repairs and until that was

5

resolved by the jury, the claim was unliquidated.")

Amazon cannot use the data it provided to argue that Trustee's claims are unliquidated. Indeed, "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak Co. of New York v. S. Photo Materials Co.,* 273 U.S. 359, 379 (1927); *see also Story Parchment v. Paterson Parchment Paper Co.,* 282 U.S. 555, 564 (1931). The purpose of requiring a claim to be liquidated to entitle a claimant to prejudgment interest is to protect a defendant from "pay[ing] prejudgment interest in cases where he is unable to ascertain the amount he owed to the plaintiff." *Hansen v. Rothaus*, 730 P.2d 662, 665 (1986).

Amazon should not be allowed to claim—after trial—that the very same M15 data it produced to Trustee and stated it was all he needed to calculate his claim was really too imprecise to warrant an award of prejudgment interest.[1] Here, there is ample evidence allowing the Court to believe the Trustee's interpretation of the adjustment codes and how they're used. Once the Court evaluates that evidence, it can compute with exactness the amount of inventory for which Amazon is liable. A liquidated claim is present "when the evidence furnishes data which, if believed, makes the exact computation of the amount possible without resort to opinion or discretion." *Walla Walla Cty Fire Dist. No. 5*, 745 P.2d at 1334.

The cases Amazon relies on for the proposition that dueling experts automatically make a claim unliquidated are similarly off-point. In decision in *Douglas Nw., Inc. v. Bill O'Brien & Sons Const.*, considered a variety of damages arising from construction delays. 828 P.2d 565, 582–83 n. 13 (Wash. Ct. App. 1992). Unlike this matter, the measure of damages was not defined by the contract. The damages included quantum meruit recovery

---

[1] Similarly, whether Amazon understood the Trustee's claims to only be for "missing" inventory units and whether Trustee's claims for damaged and mis-received units are untimely are issues that was previously litigated. [DE 349]. Amazon cannot seek to use these arguments now to claim Trustee cannot use the M15 data to calculate his claim.

and misrepresentation. *Id.* The court was required to assess and determine the damages associated with the delays, including matters not covered by the contract. *Id.* (importing material). Unlike *Douglas Nw., Inc. v. Bill O'Brien & Sons Const,* the parties assessed responsibility for liability for lost or damaged inventory and provided the measure of recovery. That it is necessary to count the units missing, does not cause the damages to be unliquidated.

In *St. Hilaire v. Food Servs. of Am., Inc.*, the fact finder made some determination between the experts' opinions without adopting one methodology or even portions of a single methodology. 917 P.2d 1114, 1119 (1996). Here, the Court need only reach conclusions on Ms. Morones's and Mr. Williams's disagreements. Once the Court has made its decision and considered the evidence, it may calculate the damages with exactness without further estimation or discernment. Thus, Trustee's claim is liquidated.

The assumptions Ms. Morones relied on do not require the Court's discretion in the same manner as invoked in *OTR Wheel Eng'g*. There, only partial data existed and the expert had to make an assumption to essentially create the data. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 743 F. App'x 771, 777 (9th Cir. 2018). As "the exact amount of the damages cannot be definitively fixed from the facts proved," the court found that the claim was unliquidated. *Id.* Ms. Morones' assumptions do not take the place of data. Instead, they are used to help interpret the data. Unlike the assumptions in *OTR Wheel Eng'g*, the data itself does not require any determination from the Court. Instead, the Court can calculate *with exactness* the damages owed to the Trustee.

Trustee's claim for breach of contract is determinable by computation based on the number of missing, lost, damaged, mis-received, and improperly reimbursed inventory data Amazon produced to the Trustee. Trustee's damages are liquidated as they are determinable based on the average value of DAB's inventory units and the number of units for which Amazon is liable as determined from the M15 data. *See Stevens v. Brink's Home Sec., Inc.*, 169 P.3d 473, 477 (Wash. 2007) (finding drive time payments determinable based on drive times calculated with a software program and employees' actual wage rates. As the fact

finder did not have to "rely on 'opinion or discretion' to calculate the amount" the claim was liquidated).

The Trustee offered evidence which, if believed, made the exact computation of the amount of Amazon inventory liability possible without resort to opinion or discretion. For example, Amazon's inventory adjustments reports disclosed inventory shrinkage using codes to identify the specific events causing the loss and damage. As described in those reports at the time, the adjustment codes included, among others, Code E ("Damaged at Amazon fulfillment center" and for which the "fulfillment center is responsible"), and Code D ("Destroyed; Unrecoverable inventory"). Exh. 2.0001-02. The adjustment codes also included Codes M and F, respectively, "Inventory misplaced" and "Inventory found." *Id.*

Amazon says the data from those reports are now part of the M15 data adjustments file, Exh. 131, Amazon0009635. Summing the numbers taken directly from that Amazon data file for just Codes E, D, and M/F yields the following precise amounts of missing or damaged inventory units:

- 10,284 units Code E
- 17,686 units Code D
- 39,253 units Code M/F

The Trustee's expert, Ms. Morones, used the above and other data taken from Amazon's M15 data to show that Amazon was liable for the replacement cost of 111,688 units of inventory. That total was not an "estimated" amount, it was exact: comprised of 39,331 units of expected ending inventory and 72,357 units of what she called "reimbursable adjustments." And those totals came directly from calculations based on M15 data.

Amazon doesn't dispute Ms. Morones's calculations; they dispute whether she is using the adjustment codes properly. For example, Amazon claims Morones may be "double-counting" because some units damaged and given an adjustment Code E might later be given a Code D and destroyed. But at trial, the Trustee refuted that allegation and offered evidence to the contrary.

First, as the Trustee explained at trial, the contemporaneous descriptions of how Code E and D were used—taken from an Amazon document titled "Inventory Adjustments," Exh. 2, give no reason to think that a single unit may be given two different adjustment codes. Indeed, giving two codes to the same unit would defeat the purpose of the codes, which are intended to allow a seller to know what happened to its inventory and how many units of inventory is has available to sell.

Second, other evidence confirms there was no double counting. Take the "Code E was later given a Code D and destroyed" argument, for example. DAB, not Amazon, owned its inventory, and at least up to October 17, 2013, DAB had in place a directive that any units that became "unsellable"—which resulted from a Code E adjustment—would be automatically removed and sent back to DAB every two weeks ("biweekly"). *See* Exh. 245. Amazon lacked the authority to destroy inventory belonging to DAB. But if Amazon reimbursed DAB for the inventory, then it became Amazon's. And according to Exh. 2, explaining the use of Code O: "if you are reimbursed for inventory damaged in a fulfillment center, *the damaged inventory will be transferred to Amazon* using this reason code." (emphasis added). Given the above, no unit coded E would ever be given a Code D and destroyed. Rather, a code E unit would either be automatically returned to DAB as required by the directive, or—if reimbursed by Amazon—transferred to Amazon through Code O.

Although Ms. Morones offered no opinion on inventory given a Code "Q," similar arguments apply. The M15 data show 147,968 unsellable units with a Code Q adjustment. Exh. 2 says that Code Q applies to units that were "Damaged—Miscellaneous," at a fulfillment center, when "damage cannot be attributed to a source." Amazon witness Bachand offered her opinion that these statements about Code Q were just wrong, though she had no first-hand knowledge about the matter. Like units given a Code E, units given a Code Q became unsellable, and thus would have been automatically removed from inventory and sent back to DAB. Code Q liability yields a precise number, not an estimate.

If the Court agrees with the Trustee's arguments about how the codes are used, then the adjustment codes make the exact computation of damages possible.

**B. Amazon's Argument that the Court Should Reduce any Prejudgment Interest Award Seeks to Litigate Facts After Trial**

The time for litigating facts is over. The evidence is closed and the trial has ended. Amazon's motion, however, tries to re-open the evidence. Amazon's Motion asks the Court to now try the issues of whether there a delay incommensurate with the scope and complexity of the claims and, if there was undue delay, to assess fault. These issue could have been litigated at trial, however, they were not. Amazon did not raise these issues in its portion of the Joint Pretrial Statement. [DE 332].

Compounding the difficulty assessing Amazon's Motion, the purported facts Amazon sets forth are mired in dispute. While Amazon contends it "spent months investigating [DAB's allegedly fraudulent] claims and confirming that they were baseless," Motion, at 12:18–25, evidence in the record suggests that Amazon dismissed DAB's initial assessment the very next day and generated its own assessment within a week. Ex 4.0001.

Amazon next contends that the time it spent performing the Deep Dive and compiling the M15 data to refute Trustee's claim for missing inventory units. Motion at 13:1-14. Amazon refused to reconcile the DAB inventory and directed DAB to submit individual cases. Exh. 11.0004-05. DAB submitted 1148 cases. Exh. 170.0005. Amazon labeled the cases as "spam," Exh. 168.0001, and refused to process them. Exh. 169.0001. Amazon processed 487 cases, Exh. 170.0005, but concluded that it would take 23 associates one week to process the remaining cases. *Id.* Instead, it concluded it "would NOT support inventory reconciliations that required research on pre- Oct 2011 data," *Id.* 170.000. It congratulated itself on "saving 917 hours," Exh. 170.0002, and reported that it hadn't paid "any reimbursement." *Id.* 170.0001. Amazon now accuses the Trustee of forcing it to spend months and years refuting the claims that it declined to commit the 917 associate hours it would have taken *in 2013* to simply finish processing the individual claims *it had demanded* in December 2012. Amazon now objects to paying interest to compensate the Trustee for its eight-years of delay.

Amazon claims Trustee delayed the case for two years as Trustee's experts evaluated

Amazon's data and produced expert reports. Motion, at 13:7–18. During this time, the Trustee deposed two Amazon witnesses under Rule 30(b)(6). First, in December 2017 was Jeff Moore who was designated to testify about Amazon procedures. Then in March 2019 Tasha Bachand who was designated to testify as to the DAB inventory. In between, the parties tried to work to understand the differences. In May 2018 counsel for the Trustee sought to confirm what the M15 Data showed. Exh. 116. It took Amazon some five months to provide responses that often made no sense. *Id.*

Relying in evidence not offered at trial Amazon asserts that the Trustee "delay[ed] production of an expert report until he retained an expert who would give his preferred opinion." Motion at 3:5-6. This is both improper and false. Amazon seeks to impeach Morones with evidence it never offered at trial. But the mere insinuation leaves the Court with a false impression. Cameron prepared two draft reports in 2015 based on Amazon's initial discovery responses and more than two years before the first Rule 30(b)(6) deposition. After nearly two years of trying to make sense of the May 15 Data, which both expert reports and the evidence at trial showed used inconsistent product identifiers, Ashworth produced two draft reports. Again, before either Amazon Rule 30(b)(6) deposition. If either the 2015 Cameron work or the 2017 Ashworth reports provided a basis to impeach Morones, they would have been offered at trial. They do not and were not. Trustee was not shopping for experts, but presented testimony from an expert who accurately identified Trustee's damages. Morones produced her report about 60 days after the second Amazon Rule 30(b)(6) deposition. There was no delay.

Amazon's motion fails under Washington law. While the Court has "discretion to disallow such interest during periods of unreasonable delay in completing litigation that is attributable to claimants," the basic rule is that "prejudgment interest on liquidated claims ordinarily is a matter of right…." *Colonial Imports v. Carlton Nw., Inc.*, 921 P.2d 575, 583 (Wash. Ct. App. 1983). In addition, the Court should consider that an undue delay may justify the suspension of prejudgment interest only if it is "(1) a failure by the plaintiff or his attorney to take some action in the prosecution of a case at a time that would otherwise

seem appropriate to a reasonable person or attorney," or "(2) the taking of some action by the plaintiff or his attorney that bears absolutely no reasonable relation to the prosecution of the case or is otherwise impermissible." *Mt. Hawley Ins. Co. v. Zurich Am. Ins. Co.*, 84 P.3d 286, 290 (Wash. Ct. App. 2004) (cleaned up).

Amazon has offered no evidence to suggest the alleged delays (if they were in fact caused by Trustee) were unreasonable. Instead, Amazon appears to argue that Trustee should not be awarded prejudgment interest because Amazon disagrees with Trustee's position in the case. A "defendant's belief that he or she never owed the money in the first place has never been an excuse for avoiding interest on a liquidated claim." *Colonial Imports*, 921 P.2d at 584. Trustee cannot be penalized for engaging in the adversarial process.

Similarly, Amazon complains of the two-year period in which Trustee's experts were evaluating Amazon's data, claiming it should not owe prejudgment interest during this time. The example Amazon provides, however, from *Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n*, was a four-year delay cause by the plaintiff's failure to present an order of judgment. 972 P.2d 1282, 1292 (Wash. Ct. App. 1999). There was no explanation as to why it took four years to present a simple document. *Id.* Trustee and his experts had to digest and understand the convoluted M15 data, which required testimony from Amazon's designated representatives to understand. These depositions concluded in 2019. The Trustee provided the Morones report, Exh. 7, about 60 days later.[2]

Finally, Amazon contends that it should not pay any prejudgment interest during a five-month period during which the parties disputed the extent of disclosures required of Trustee's experts. In litigation, however, there will be disputes that take time. Such disputes, so long as they are related to the prosecution of the case, are not impermissible even if the Trustee "press[ed] for a position that ultimately fails." *Colonial Imports*, 921 P.2d at 583. Trustee's position was not clearly erroneous and the Trustee should not be penalized for

---

[2] Again, Amazon cannot now complain that the data it handed over to the Trustee took years to analyze as the data is Amazon's. *See Eastman Kodak Co.,* 273 U.S. at 379.

litigating a reasonable position.

## III.    CONCLUSION

The time for motion practice and to identify issues for trial is long past. The time to present evidence and argue it in closing is also past. The Motion is an improper attempt to present, post-trial, evidence that may or may not have been admissible during the trial.

This remains a breach of contract case. Amazon accepted the DAB inventory and directed the Trustee to use the M15 Data to calculate its damages. Amazon refused all other attempts to reconcile the DAB inventory and refused to produce or address other data. Perhaps it thought the Trustee would be unable to unravel the M15 Data. Well, he did. He presented his damages based upon that data. Amazon may not be heard to complain that the data it produced and directed the parties to use is inadequate to determine what it owes to this estate, including the interest that has been accruing since it decided to wait "til the end." The end is now and it includes the interest that accrued during the eight-year delay. The Trustee requests that the Motion be denied.

DATED April 2, 2021.

                                        GALLAGHER & KENNEDY, P.A.

                                        By: */s/ Dale C. Schian*
                                            Mark C. Dangerfield
                                            Dale C. Schian
                                            Kenneth N. Ralston
                                            2575 East Camelback Road
                                            Phoenix, Arizona 85016-9225
                                            *Attorneys for Trustee Timothy H. Shaffer*

# CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2021, I electronically transmitted the attached document to the following parties:

Richard M. Lorenzen, Esq.
Perkins Coie, LLP
2901 North Central Avenue, #2000
Phoenix, Arizona 85012-2788
Attorneys for Amazon Services LLC
rlorenzen@perkinscoie.com

Eric J. Weiss, Esq.
Mallory G. Webster, Esq.
Perkins Coie, LLP
1201 Third Avenue, #4900
Seattle, Washington 98101-3099
Attorneys for Amazon Services LLC
eweiss@perkinscoie.com
MWebster@perkinscoie.com

    Gloria Kannberg

8484185v7/29611-0001